# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| MADISON BOARD OF EDUCATION<br><br>Plaintiff,<br>v.<br><br>S. V. and M.V. on behalf of C.V.,<br><br>Defendants. | Civil Action No. 2:19-cv-04755-SCM<br><br><br>**OPINION** |

**Steven C. Mannion**, United States Magistrate Judge.

Before this Court are cross-motions for summary judgment by Plaintiff Madison Board of Education ("Madison") and Defendants S.V. and M.V., on behalf of C.V. (the "Parents").[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 and has considered the parties' submissions without oral arguments.  For the reasons stated herein, the Court **GRANTS** the Parents' motion for summary judgment and **DENIES** Madison's motion for summary judgment.

---

[1] (ECF Docket Entry No. ("D.E.") D.E. 41, 42, 43, 46, 47). Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

## I.   <u>BACKGROUND AND PROCEDURAL HISTORY</u>

The present action arises from the appeal of a special education decision entered by the New Jersey Office of Administrative Law. The appeal concerns the reimbursement for tuition and transportation services arising from the Parents' unilateral placement of C.V. at SEARCH, a private education program for children with autism.

C.V. is the six-year-old daughter of defendants, S.V. and M.V. When she was one year old, C.V. began receiving applied behavioral analysis ("ABA") services through the State of New Jersey's Early Intervention ("EI") program.[2] Shortly after beginning these services, C.V was diagnosed along the Autism Spectrum.[3] About six months later, the Parents also began providing C.V. with supplemental at-home ABA services through Hand Over Hand, a private ABA provider.[4]

Before C.V.'s third birthday, when she would become eligible for preschool, EI referred C.V. to Madison in anticipation of that transition. Madison met with the Parents and evaluated C.V.[5] Madison then invited C.V.'s parents to an eligibility and individual education program ("IEP") meeting held on April 3, 2017.[6] Madison found C.V. eligible for special education and related services under the category of "preschool child with a disability." During the IEP meeting, the Parents did not explicitly inform the District that they might reject the proposed IEP.[7]

---

[2] (D.E. 42-2, ¶ 4; *see also* AR Vol. I, Sect. 5, p. 144-147, S.V. Direct Exam.).

[3] (D.E. 42-2, ¶ 3; *see also* AR Vol. I, Sect. 5, p. 149).

[4] (A.R. Vol. I, Tab 5, p. 144-147 and 160, S.V. Direct Exam.).

[5] (D.E. 42-2, ¶ 6-8, Pl.'s Statement of Undisputed Facts).

[6] (D.E. 42-2, ¶ 9).

[7] (D.E. 42-2).

By letter dated April 26, 2017, the Parents, through counsel, informed the District that they would unilaterally place C.V. at SEARCH, and that until then they would continue their ongoing at-home ABA services with Hand Over Hand.[8] In the same letter, the Parents informed Madison that they would like to have an independent expert evaluate the District's proposed program.[9]

Sometime in May, the Parents sent their expert, Dr. Carol Fiorile, to observe Madison's program.[10]

On May 26, 2017, the Parents filed for due process with the New Jersey Department of Education, alleging that the District's proposed IEP was "inappropriate to meet C.V.'s individualized needs" and failed to "provide her with meaningful educational benefit."[11] The petition was transmitted to the New Jersey Office of Administrative Law.

The Honorable Laura Sanders, Chief ALJ, denied partial summary judgment on January 8, 2018.[12] As in the current petition, Madison argued that reimbursement would not be available regardless of whether Madison had provided a free and appropriate public education ("FAPE"), because SEARCH is not a "school." Judge Sanders found that "the federal courts have declined to adopt a blanket rule disallowing reimbursement for educational institutions that do not fit a particular state's rules of accreditation and approval[,]" and concluded "that upon a determination

---

[8] (A.R. Vol. III, Sect. F, Tab 4, Letter).

[9] *Id.*

[10] (A.R. Vol. I, Tab 1 at 119, McNichol Direct Exam.).

[11] (D.E. 42-2 at 5; A.R. Vol. II, Sect. A, Tab 1, ¶ 6, Final Decision).

[12] (A.R. Vol. II, Sect. A, Tab 5, Order).

that the school district's proposed IEP failed to provide FAPE, and that the school selected by petitioners is appropriate for C.V., petitioners are eligible for reimbursement of tuition and fees."[13]

The matter was then reassigned to the Honorable Jude-Anthony Tiscornia, ALJ, who heard the case over the course of five hearing-days. Numerous witnesses testified, contesting whether the district provided a FAPE, whether the Parents raised any concerns regarding the District's proposed program, whether the placement at SEARCH was appropriate, and whether the Parents provided the District with notice that they would unilaterally enroll C.V. at SEARCH.[14]

On November 7, 2018, Judge Tiscornia determined that the District had not offered C.V. a FAPE and ordered Madison to "reimburse [the Parents] for their out-of-district placement at SEARCH Consulting from May 17, 2017, to present and for transportation to and from SEARCH Consulting."[15] Madison filed this action challenging Judge Tiscornia's final decision.[16]

On July 16, 2019, the parties voluntarily consented to proceed under the authority of a magistrate judge, and the case was referred to the undersigned the next day.[17]

The parties filed cross motions for summary judgment on March 13, 2020,[18] and at the Court's request they filed supplemental briefings on May 28, 2020.[19]

---

[13] (*Id.* at p. 8).

[14] (*See* A.R., Vol. II, Sect. A, Tab 6 at 21, Final Decision).

[15] (*Id.* at 30).

[16] (D.E. 1, Complaint).

[17] (D.E. 27; D.E. 28).

[18] (D.E. 41; D.E. 42).

[19] (D.E. 54; D.E. 55).

## II.    <u>AUTHORITY</u>

Magistrate judges are authorized full authority over dispositive motions, the conduct of trial, and entry of final judgment, without district court review, upon consent by the parties and a referral from the district court.[20]  A judgment entered by "a magistrate judge designated to exercise civil jurisdiction under [§ 636(c)(1)]" is to be treated as a final judgment of the district court, appealable "in the same manner as an appeal from any other judgment of a district court."[21]  The parties consented to magistrate judge jurisdiction and the District Court referred this case to the undersigned to conduct all proceedings.[22]

## III.    <u>LEGAL STANDARD</u>

Congress enacted the Individuals with Disabilities Education Act ("IDEA") in 1970 so that all children with disabilities would be provided "a free appropriate public education [("FAPE")] which emphasizes special education and related services designed to meet their unique needs…."[23] The Act was amended in 1997 to include Section 1412(a)(10)(C), entitled "Payment for education of children enrolled in private schools without consent of or referral by the public agency" which sets forth principles applicable to reimbursement for the costs of unilateral private-school placement when public school districts fail to provide a FAPE.[24] The Supreme Court has rejected

---

[20] 28 U.S.C. § 636(c)(1).  *See Festival Fun Parks, LLC v. Mountain Creek Resort, Inc.*, 2015 WL 758467, at *5 (D.N.J. Feb. 23, 2015) (citing *Roell v. Withrow*, 538 U.S. 580, 585 (2003)).

[21] 28 U.S.C. § 636(c)(3).

[22] (D.E. 27).

[23] *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) (citing *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373-74 (1985) (quoting 20 U.S.C. § 1400(c) (1982 ed.), now codified as amended at §§ 1400(d)(1)(A), (B)).

[24] *Forest Grove*, 557 U.S. at 240.

a strict reading of this Section, recognizing courts' broad authority to grant relief where appropriate.[25]

Under this Section, parents who unilaterally enroll their children in private school after their school district fails to provide a FAPE may be entitled to reimbursement,[26] regardless of whether the child ever received any special education or related services from their district.[27] But such parents do so at their own financial risk.[28] Reimbursement after a unilateral placement is available only if the court finds that: (1) the district was not timely in offering the student a free, appropriate public education prior to that enrollment; and (2) the private placement is appropriate.[29] The "student and his parent bear the burden of demonstrating that the private placement is appropriate."[30] The parties in this case do not dispute the applicability of the first prong but do dispute the second.

## IV.  DISCUSSION

The issue before the Court is whether the Parents' unilateral placement of C.V. at SEARCH was appropriate. Madison claims that it was not, for two reasons: (a) SEARCH is not a "school," and IDEA only allows reimbursement for unilateral placement at "schools," and (b) the Parents

---

[25] *Id.*

[26] 20 U.S.C. §1412(a)(10)(C)(ii); 34 C.F.R. §300.148(c); N.J.A.C. 6A:14-2.10(b).

[27] *Forest Grove*, 557 U.S. at 246.

[28] *Id.*; *see also Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373-74 (1985).

[29] 34 C.F.R. §300.148(c); N.J.A.C. 6A:14-2.10(b).

[30] *W.C. ex rel. Sue C. v. Cobb Cty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1362 (N.D. Ga. 2005) (citing *M.S. ex rel. S.S. v. Board of Educ. of the City Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 104 (2d Cir.2000)); *Linda W. v. Indiana Dept. of Educ.*, 200 F.3d 504, 506 (7th Cir.1999) (citing *Burlington*, 471 U.S. 359); *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 533 (3rd Cir.1995).

6

unreasonably prevented Madison from offering a valid IEP and placed C.V. at SEARCH without giving the district sufficient notice.

### A.    Appropriateness of SEARCH

The first issue for the Court is whether C.V.'s unilateral placement was appropriate at SEARCH in particular. Madison contends that IDEA limits reimbursable placements to "schools."[31] Although it acknowledges that parents may be reimbursed if they unilaterally choose an "unapproved, unaccredited or even a sectarian school[,]" Madison argues that reimbursement is not available or should be reduced if parents choose a clinic that is not a school.[32] It further claims that Judge Tiscornia found that SEARCH was not a "school" (a fact that the Parents do not dispute, here), but that both administrative law judges failed to give effect to this non-school fact.[33] However, this does not appear to be the case; both administrative law judges considered this fact and found that it is not determinative. This Court agrees.

The applicable law and regulation provide that:

> If the parents of a child with a disability ... enroll the child in a **private elementary school or secondary school** without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.[34]

However, the Supreme Court has concluded that the IDEA "is phrased permissively, stating only that courts 'may require' reimbursement in those circumstances, it does not foreclose

---

[31] (D.E. 42, Pl. Br. at 14 n.5).

[32] (D.E. 42, Pl. Br. at 14 (citing *L.M. v. Evesham Bd. of Educ.*, 256 F.Supp. 2d 290 (2003)).

[33] (D.E. 42-1 at 7-8).

[34] 34 C.F.R. § 300.148(c) (emphasis added); see also 20 U.S.C. § 1412(a)(10)(C)(ii).

reimbursement awards in other circumstances."[35] The subsections are "best read as elucidative rather than exhaustive."[36] They do not curtail the more general authority to "grant such relief as the court determines is appropriate…."[37]

Courts have expressly found that Section 1412(a)(10)(C) does not foreclose reimbursement when placement is not within a private school, and have approved reimbursement for private tutoring, home-based educational services, therapy, and therapeutic residential treatment.[38] Where one court rejected a placement as inappropriate, it was because the "methodology and certification were inadequate to meet the Plaintiff's educational needs."[39] This was, in part, because none of the teachers were certified and the school had been in existence only one year.[40]

In determining what unilateral placements *are* appropriate, the circuit courts have not focused on the word "school," and have found that

> parents *need not* show that a private placement furnishes every
> special service necessary to maximize their child's potential. They
> need *only* demonstrate that the placement provides educational
> instruction specially designed to meet the unique needs of a

---

[35] *Forest Grove*, 557 U.S. at 241-42.

[36] *Id*.

[37] *Id*.

[38] *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, Missoula, Mont.*, 960 F.2d 1479 (9th Cir. 1992) (private tutoring reimbursed); *Murphy v. Glendale Unified Sch. Dist.*, No. 2:16-CV-04742-SVW-AS, 2017 WL 6550427, at *4 (C.D. Cal. Aug. 1, 2017) (therapeutic residential treatment approved); *M.M. v. Lafayette Sch. Dist.*, No. 10-CV-04223-SI, 2016 WL 4013790, at *4 (N.D. Cal. July 27, 2016) (IDEA reimbursement approved for therapy); *R.L. v. Miami-Dade Cty. Sch. Bd.*, No. 07-20321-CV, 2012 WL 13006192, at *2 (S.D. Fla. Apr. 20, 2012), aff'd, 757 F.3d 1173 (11th Cir. 2014) (home based educational expenses approved).

[39] *W.C. ex rel. Sue C. v. Cobb Cty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1363 (N.D. Ga. 2005).

[40] *Id*.

> handicapped child, supported by such services as are necessary to
> permit the child to benefit from instruction.[41]

Stated otherwise, private placement is appropriate if "the education provided by the private school provides the child with a FAPE in that it is reasonably calculated to enable the child to receive educational benefits."[42] A private placement need not provide an education that meets the IDEA's definition of a FAPE.[43] Instead, it must only meet certain basic requirements of the IDEA and cannot have provided "no educational benefit."[44]

Here, Madison does not argue or provide evidence that SEARCH provided "no educational benefit." Instead, they focus on the literal use of the word "school," an approach that has been thoroughly rejected by the Supreme Court and numerous lower courts. From the record, SEARCH appears to have met C.V.'s needs and provided educational benefits. In fact, the given reasons that SEARCH is not a "general education program" or "state-approved clinic" are, respectively, that the program is tailored to children who (like C.V.) have autism, and that it does not offer its

---

[41] *S.L. ex rel. Loof v. Upland Unified Sch. Dist.*, 747 F.3d 1155, 1159 (9th Cir. 2014) (citing *C.B.*, 635 F.3d at 1159 (emphasis omitted) (quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d Cir.2006)) (emphasis added).

[42] *Endrew F. by & through Joseph F. v. Douglas Cty. Sch. Dist. RE 1*, 290 F. Supp. 3d 1175, 1186 (D. Colo. 2018), appeal dismissed sub nom. *Endrew F. by & through Joseph & Jennifer F. v. Douglas Cty. Sch. Dist.* Re-1, No. 18-1089, 2018 WL 4360885 (10th Cir. Apr. 5, 2018) (approving reimbursement for Firefly Autism House) (citing *Thompson R2–J Sch. Dist. v. Luke P.*, supra, 540 F.3d at 1148; *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 978 (10th Cir. 2004)).

[43] *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 13 (1993) (holding that parents were not barred from reimbursement just because the private school in which the student was enrolled did not meet the IDEA's definition of a FAPE).

[44] *See W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1487 (9th Cir.1992), *superceded by statute on other grounds*, IDEA Amendments of 1997, Pub.L. 105–17, § 614(d)(1)(B), 111 Stat. 37; *see also Murphy*, 2017 WL 6550427, at *4 (citing *Florence County*, 510 U.S. at 12-13).

services part-time (it only offers full-time services).[45] While Madison provided witnesses that testified that C.V. would receive services in the district that she does not receive at SEARCH, it offered no evidence that SEARCH has *no educational benefit* to her. The Court agrees with the ALJ and finds that the placement meets the basic requirements of IDEA and is therefore eligible for reimbursement.

### B.  Reasonableness and Notice

Madison also contends that, even if SEARCH was an appropriate placement, Madison should not have to reimburse the Parents because the Parents unreasonably prevented Madison from being able to provide an appropriate IEP and did not give the district enough notice of the unilateral placement.

Under IDEA, even if a child was denied a FAPE and the private placement was appropriate, reimbursement for unilateral private placement may not be appropriate when the parent acted unreasonably.[46] Additionally, reimbursement may be reduced or denied if "10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency" that "they were rejecting the placement proposed by the public agency to provide a FAPE to their child, including stating their concerns and their intent to enroll their child in a private school at public expense[.]"[47]

Both the reasonableness and the notice requirements are intended to ensure that a district is given a good faith opportunity to provide a FAPE before ending up on the hook to pay for private

---

[45] (A.R. Vol. II, Sect. A, Tab 6 at 12, Final Decision; D.E. 42-2 at 7).

[46] *Maynard v. District of Columbia*, 701 F.Supp.2d 116, 124–25 (D.D.C.2010).

[47] *Reg'l Sch. Unit 51 v. Doe*, 920 F. Supp. 2d 168, 210 (D. Me. 2013) (quoting 20 U.S.C. § 1412(a)(10)(C)(iii)(I); see also 20 U.S.C.A. § 1412(a)(10)(C)(iii)(I); 34 C.F.R. § 300.148(d); MUSER § IV.4.G(3)(d)(i)).

placement.[48] In other words, parents should not be able to make a public school district pay for private school by stalling until the public school can no longer offer a timely FAPE. But school districts should also not be allowed to use the notice requirement as tool to avoid providing a FAPE.

Madison leans heavily on a recent Third Circuit case, *J. F. v. Byram Township Board of Education*, which involved the parents of a child who had moved to a new school district after their previous district reimbursed them for their child's attendance at a private school.[49] The parents in that case were denied reimbursement at the new school because they enrolled the child in a private program even before their IEP meeting, never intended to send their child to the new school district, and failed to give timely notice of their unilateral placement.[50] The Third Circuit held that those parents had not given the district a chance to provide a FAPE.[51] But, notably, the Court had previously held that the school district *had* met their "obligation under the IDEA . . . to provide [the child] with services comparable to those he received in [his previous school district] until [the district] either implements the [previous] IEP or designs its own program."[52] The district had even agreed to use the exact same IEP that the previous school district had used.[53]

---

[48] *See, e.g.*, *J. F. v. Byram Twp. Bd. of Educ.*, No. 19-2412, 2020 WL 2499815, at *3 (3d Cir. May 14, 2020).

[49] *J. F. v. Byram*, 2020 WL 2499815.

[50] *Id.*

[51] *Id.*

[52] *Id.* at *1.

[53] *Id.*

The current situation differs from that in *J.F. v. Byram* because *Madison never met their obligations* under the IDEA to offer a FAPE in their IEP, *despite being given the opportunity* to do so. Even after receiving the letter, when Madison was inarguably on notice, Madison failed to demonstrate to the Parents' expert that C.V. would be given a FAPE at the district.[54]

Madison seems to claim that the visit from the Parents' expert after the letter somehow negates the letter's notice function. However, the letter is not ambiguous about the Parents' intent. It clearly states that the Parents' intended to unilaterally place C.V. at SEARCH and even mentions that the letter is meant to satisfy the Section 1412 notice requirement. The Parents further testified that they had hired their expert to confirm that they had made the right decision, not to make the decision in the first place.[55] The April 26, 2017 letter was an adequate rejection of Madison's IEP under the notice requirement. Madison had a good faith opportunity to provide a FAPE and was not prevented from doing so by any lack of notice.

This case also differs from *J.F. v. Byram* because the Parents did not enroll C.V. in SEARCH before the IEP meeting. Despite Madison's repeated claims to the contrary, it is in no way "clear" that the parents had made up their minds that C.V. would attend SEARCH before the IEP meeting. The clear communication problems between Madison and the Parents during and after the IEP meeting were more the fault of Madison than of the Parents.[56] The Court finds that the ALJ was correct in finding that the Parents acted reasonably.

Finally, since C.V. was never enrolled in public school in the first place, Madison offers a number of possible days that could constitute C.V.'s "removal" from public school—all before the

---

[54] (A.R. Vol. II, Sect. A, Tab 6 at 17, Final Decision).

[55] (A.R. Vol. I, Tab 5 at 249, S.V. Redirect).

[56] (A.R. Vol. II, Sect. A, Tab 6 at 26-27, Final Decision).

10-day window created by the letter—including the day the Parents first talked to SEARCH, the day the contract with SEARCH was signed, and the day C.V. turned three and became eligible for preschool. But C.V. did not attend SEARCH within 10 days of the letter[57] and, as noted by multiple courts, "equating 'removal of the child from the public school' with the act of inscribing the child in a private school several weeks or months earlier for possible attendance several weeks or months later at the very least tortures the meaning of the word 'removal.'"[58] The meaning of the word is similarly tortured by claiming that C.V. stopped attending public school before she even began. On the day she turned three and became eligible for preschool, C.V. was not enrolled in public school, but was receiving instruction from Hand Over Hand—instruction she continued to receive until and after starting at SEARCH, without reimbursement from Madison.[59]

Above all, the fact remains that Madison had a good faith opportunity to provide an IEP and FAPE and did not do so. Madison does not even appeal the ALJ finding to that effect. The Court finds that the Parents acted reasonably and the letter was sent more than ten days before "removing" C.V. from public school. In all, full reimbursement of C.V.'s unilateral placement at SEARCH was appropriate. The Court DENIES Madison's motion for summary judgment and GRANTS the Parents' motion.

### C. Attorney Fees

Since the Parents are the prevailing parties, IDEA entitles them to reasonable attorney fees and costs.[60] The Parents request attorney's fees of $127,420. This is calculated using hourly rates

---

[57] (*See* A.R. Vol. I, Tab 5 at 207-08, S.V. Cross-Exam.).

[58] *Sarah M. v. Weast*, 111 F. Supp. 2d 695, 701 (D. Md. 2000).

[59] (A.R. Vol. II, Sect. A, Tab 6 at 30, Final Decision).

[60] 20 U.S.C. § 1415(i)(3)(B)(i)(I).

of $400, $200, and $100 per hour for partners, associates, and paralegals/law clerks, respectively. The Court notes that Madison has not specifically disputed the reasonableness of these rates, nor the number of hours worked on this case.

Instead, Madison's main argument against awarding the Parents' attorney fees is that this present appeal of the administrative decision is not yet finished. This opinion finishes the present appeal. Madison also argues that any fees should be reduced to reflect the Parents' level of success in this litigation and the unreasonableness with which they acted. However, this Court has not found that the Parents were unsuccessful or unreasonable in the present appeal, and Madison has only stated the standard for reducing awards of attorney fees; it has not provided any actual examples of unreasonableness. Since the rates and overall fees are not unreasonable on their face, the Court finds that the Parents should be awarded the full $127,420.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Madison's motion for summary judgment, **GRANTS** the Parents' motion for summary judgment, and **GRANTS** the Parents' request for $127,420 in attorney fees.

Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

8/26/2020 9:09:16 AM

Original: Clerk of the Court
cc: All parties
    File

14